**IT IS HEREBY ORDERED** that this Court has subject matter jurisdiction of this action.

**NORTH DAKOTA FAIR HOUSING COUNCIL, INC., and Josephine Conley, Plaintiffs,**

v.

**Earl ALLEN, individually and d/b/a Allen Realty Co., Inc., and AA & A Realty, Defendants.**

**No. A1–03–119.**

United States District Court, D. North Dakota, Northwestern Division.

May 27, 2004.

Christopher Brancart, Brancart & Brancart, Pescadero, CA, for Plaintiffs.

Moody M. Farhart, Farhart, Lian, Maxson, Louser & Zent, P.C., Minot, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

HOVLAND, Chief Judge.

The plaintiffs, Josephine Conley and the North Dakota Fair Housing Council, Inc., initiated this action on September 29, 2003, alleging that the defendant, Earl Allen, individually and d/b/a Allen Realty Co., Inc. and AA & A Realty, engaged in a pattern of unlawful discrimination on the basis of race, color, national origin, and disability in violation of the Federal Fair Housing Act, 42 U.S.C. § 3613. On February 4, 2004, Allen filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Allen seeks a dismissal of the plaintiffs' complaint on the grounds the North Dakota Fair Housing Council lacks standing to assert a claim under the Fair Housing Act, that the North Dakota Fair Housing Council's claim is barred by the applicable statute of limitations, and that the complaint fails to state claims upon which relief may be granted. For the reasons stated below, the motion is granted in part as to the North Dakota Fair Housing Council.

## I. BACKGROUND OF THE CASE

The plaintiff, Josephine Conley (Conley) is an African–American who suffers from major depressive disorder, panic disorder, and attention deficit disorder. The North Dakota Fair Housing Council (Fair Housing Council) is not a state entity, but rather a private, non-profit corporation principally located in Bismarck, North Dakota. Its stated purpose is "the promotion of equal opportunity in renting, purchasing, financing and advertising of housing and the elimination of all forms of illegal housing discrimination." The defendant, Earl Allen (Allen), owns and operates residential rental properties in Minot, North Dakota. Allen conducts his business through Allen Realty Co., Inc. and AA & A Realty.

Conley lived with her husband in an apartment leased from Allen from July 1998 until November 1999. When she moved in, Conley brought along a dog she claimed was therapeutic to the extent that it helped her cope with her mental disability. While a tenant, Conley and her husband were allegedly the subject of disparaging remarks and racial slurs made by Allen. In addition, Conley and her husband were allegedly singled out for a rent increase, were allegedly threatened with eviction if they did not get rid of their dog by May 5, 1999, and were penalized $25 when moving out of the apartment for having an unauthorized dog on the premises. According to Conley, Allen neither increased the rent for his other tenants nor prohibited his other tenants from having pets on the premises.

Between April 1999 and June 2000, Conley filed discrimination complaints against Allen with the Fair Housing Council, the United States Department of Housing and Urban Development, and the North Dakota Department of Labor. The North Dakota Department of Labor issued a determination of no reasonable cause on October 28, 2002, finding no evidence that Conley's dog had an ameliorative effect on her disability or that the dog was necessary for her to have equal enjoyment of her rental unit. In contrast, the Fair Housing Council, upon completing its investigation in 2003, concluded that Allen, acting individually and through Allen Realty Co., Inc. and AA & A Realty, had engaged in a broad pattern or practice of discrimination against tenants and prospective tenants.

On September 29, 2003, Conley and the Fair Housing Council initiated this action by complaint and alleged that Allen, Allen Realty Co., Inc., and AA & A Realty (hereinafter collectively referred to as the Defendants) engaged in a pattern or practice of unlawful discrimination on the basis of race, color, national origin, and disability in violation of the Federal Fair Housing Act (FHA), 42 U.S.C. § 3601, et. seq. Conley alleged the Defendants discriminated against her on account of her race and mental disability while the Fair Housing Council alleged its ability carry to out its mission and serve the public was injured on account of the Defendants' discrimination. In addition, the Fair Housing Council alleged it had suffered economic losses to the extent it had expended resources in its efforts to investigate and address the Defendants' unfair housing practices.

On February 4, 2004, the Defendants filed a Motion to Dismiss on the grounds the Fair Housing Council lacked standing to assert a claim, the Fair Housing Council's claim was time barred, and the complaint as a whole failed to state a claim on which relief could be granted.

On February 25, 2004, Conley and the Fair Housing Council filed a response to the motion, asserting that its general allegations of injury were sufficient to confer it with standing, that its claims were timely, and that the complaint adequately alleged that the Plaintiffs were injured by the Defendants' discriminatory practices.

Noting that the parties had cited to documents outside the pleadings, the Court construed the Defendants' Motion to Dismiss as a Motion for Summary Judgment and allowed the parties to supplement their briefs in support of and in opposition to the Defendants' motion. Thereafter, the parties filed supplemental briefs on May 5 and 11, 2004. The Defendants' motion is now ripe for the Court's consideration.

## II. *STANDARD OF REVIEW*

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of

demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *LEGAL ANALYSIS*

The Fair Housing Act prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, national origin, or disability. 42 U.S.C. § 3604. With respect enforcement by private persons, the Act provides that

> [a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice ... to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). "An aggrieved person includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

### A. *STANDING*

■ Article III of the United States Constitution requires that all litigated matters involve a case or controversy. To satisfy this requirement, a plaintiff must establish that he or she has standing to sue. A standing inquiry generally involves a two-tiered examination: (1) the constitutional limits on federal court jurisdiction; and (2) the prudential limits that the court exercises to avoid deciding questions of broad social import where no individual right would be vindicated. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). As the Supreme Court noted in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), Congress has essentially dispensed with the prudential standing limits in the context of an action under the Fair Housing Act. In the wake of *Havens*, courts have recognized that the sole requirement for a fair housing organization to have standing to sue in its own right under the Fair Housing Act is the Article III standard of an injury in fact. *See Arkansas ACORN Fair Housing, Inc. v. Greystone Development*, 160 F.3d 433, 434 (8th Cir.1998) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)).

■ An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Oti Kaga, Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir.2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A fair housing organization can satisfy the injury in fact requirement so long as it has "devote[d] significant resources to identify and counteract a defendant's unlawful practices" and has alleged distinct and palpable injuries that are "fairly traceable" to the defendants' actions. *Arkansas ACORN Fair Housing, Inc. v. Greystone Development*, 160 F.3d 433, 434 (8th Cir.

1998). Conversely, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). General factual allegations of injury resulting from a defendant's conduct may suffice at the pleading stage. However, in response to a summary judgment motion, a plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 115 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

The injuries allegedly sustained by the North Dakota Fair Housing Council on account of the Defendants' actions are set forth in the complaint as follows:

> By reason of the defendants' unlawful acts and practices, the Fair Housing Council has suffered injury to its ability to carry out its purpose and to serve the public in its efforts to eliminate housing discrimination, to resolve fair housing disputes, to find and to make available decent rental housing for persons which is free from discrimination and harassment. Defendants' unlawful acts and practices have also caused the Fair Housing Council to suffer economic losses in staff pay, and in the inability to undertake other efforts to end unlawful housing practices.

(Complaint, ¶ 24).

According to the Defendants, these alleged injuries constituted nothing more than a setback to the Fair Housing Council's abstract social interests and are insufficient to confer the Fair Housing Council with standing to proceed on its own. The Defendants contend that in order to sustain a claim of injury, the Fair Housing Council must demonstrate that it either modified its services in response to the Defendants' alleged conduct or that its

investigation of the Defendants was not part of its normal day-to-day operation. *See Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71, 77–79 (3rd Cir.1998). In addition, the Defendants contend the Fair Housing Council has not established the requisite injury in fact because it has not demonstrated that its expenditure of resources occurred outside of its normal day-to-day operations. The Defendants also charge the Fair Housing Council with "creating" their damages in anticipation of litigation.

In response, the North Dakota Fair Housing Council maintains it has suffered an injury in fact in that it conducted an investigation and initiated particular efforts to counteract the Defendants' alleged discrimination that it otherwise would have not undertaken; diverted scarce resources from its other activities in order to conduct its investigation; and has continued to devote significant resources to identify, investigate, monitor, and counteract the effects of the Defendants' alleged discrimination. As proof of its efforts, the Fair Housing Council cites to interviews it conducted of former tenants and employees, its education and outreach efforts, and its counseling of the Defendants' alleged victims. The Fair Housing Council estimates it has identified and attempted to contact 290 potential witnesses in connection with this dispute, has mailed letters to approximately 200 of the Defendants' current or former tenants, has distributed fair housing information to those who may have been victimized by the Defendants' actions, has distributed information about fair housing rights to three area organizations (Legal Assistance of North Dakota, the Minot Housing Authority, and the Housing Office of Minot Air Force Base) in an effort to educate area residents, and has disseminated a public service announcement for publication in the Minot

Daily News. It claims to have incurred approximately $6,000 in staff time and out-of-pocket expenses in connection with the investigation of the Defendants to date.

In *Arkansas ACORN Fair Housing, Inc. v. Greystone Development,* 160 F.3d 433, 434–35 (8th Cir.1998), the Eighth Circuit acknowledged that the deflection of a fair housing organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, is sufficient to constitute an actual injury where traceable to some act by the defendant. Relying in part on a case entitled *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71, 76–78 (3d Cir.1998), the Eight Circuit added that a fair housing organization must present specific facts establishing distinct and palpable injuries fairly traceable to a defendant's activities in order to withstand summary judgment.[1]

In *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,* the Third Circuit adopted the reasoning espoused by the D.C. Circuit and held that the pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III.

[Havens] did not base standing on the diversion of resources from one program to another, but rather on an alleged injury that the defendant's actions themselves had inflicted upon the organization's programs. To be sure the Court did mention the "drain on an organization's resources." Yet this drain apparently sprang from the organization's need to "counteract" the defendants' assertedly illegal practices, and thus was simply another manifestation of the injury that those practices had inflicted

upon "the organization's non-economic interest in encouraging open housing" . . .

*Montgomery Newspapers,* 141 F.3d 71, 79 (3d Cir.1998) (quoting *Fair Employment Council of Greater Washington, Inc., v. BMC Marketing Corp.,* 28 F.3d 1268, 1277 (D.C.Cir.1994)).

Although the North Dakota Fair Housing Council has provided information regarding its efforts to counteract the Defendants' alleged discrimination, the Council has not persuaded the Court it would have never engaged in such efforts had it not been for the actions of the Defendants. To substantiate its claim of damages, the Fair Housing Council states, in part, that it has published public service announcements in the local press and has distributed educational materials to local organizations and those who may have been victims of discrimination. Such an expenditure of resources is consistent with the Fair Housing Council's stated purpose of educating and assisting the public, but is not clearly traceable to the Defendants' alleged misconduct. Advertisements and public service announcements in the Minot Daily News and the distribution of educational materials to Legal Assistance of North Dakota, the Minot Housing Authority, and the Housing Office of Minot Air Force Base, may serve to benefit the Defendants' alleged victims. However, it is clear these materials were not targeted solely at the Defendants, but are designed to benefit the community as a whole. The North Dakota Fair Housing Council has not shown that its ability to carry out its mission has been frustrated or otherwise adversely impacted by the Defendants' actions. As a result, the Court concludes the Fair Housing Council has not demonstrat-

---

1. The Eighth Circuit in *Arkansas ACORN Fair Housing* affirmed the district court's decision to grant summary judgment in favor of the developer. The court held the fair housing advocacy organization lacked standing to bring suit.

ed an injury in fact necessary to confer it with standing to proceed against the Defendants' in its own right.[2] The Court will next address the timeliness of Conley's claims.

## B. *STATUTE OF LIMITATIONS*

As noted above, the Fair Housing Act provides that an aggrieved person may commence a civil action in an appropriate court not later than two years after the occurrence or the termination of an alleged discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A). This two-year statute of limitations runs from the last asserted occurrence of a discriminatory housing practice. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The record establishes that Conley lived in an Allen-owned apartment from July 1998 until November 1999. Assuming Allen discriminated against Conley as late as November 1999, Conley's two-year window for initiating legal proceedings would have closed in November 2001. This action was commenced in September 2003. Thus, at first blush it appears that Conley's claim is time-barred.

However, the Fair Housing Act provides that the computation of the two-year statute of limitations "shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B). The record establishes that Conley filed a complaint with the United States Department of Housing and Urban Development (HUD) sometime between April 1999 and June 2000. It is unclear from the record whether HUD

acted on Conley's complaint. Nevertheless, the fact that Conley initiated an administrative proceeding with HUD would serve to toll the two-year statute of limitations.

In addition to filing a complaint with HUD, the record reveals that Conley filed a complaint with the North Dakota Labor Department between April 1999 and June 2000. The Labor Department did not rule on Conley's complaint until October 28, 2002. Arguably, the two-year statute of limitations would have tolled during the pendency of the Labor Department's investigation. When the time elapsing between the initiation of administrative proceedings is excluded from statute of limitations calculations, it is apparent that Conley's action is timely.

## C. *FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED*

To establish a prima facie case of discrimination under the Fair Housing Act, Conley must, according to the Defendants, show that she is a member of a protected class and that she was discriminated against in the terms and conditions of her rental on account of her membership in a protected class. The Defendants maintain that Conley has failed to establish a prima facie case of discrimination because she has failed to allege facts that would show she was discriminated against on the basis of her race or disability, was refused reasonable accommodations necessary to afford her equal opportunity to use and enjoy the apartment, or was treated differently than other similarly situated persons. In response, Conley contends that she has raised triable issues

**2.** In 2000, the United States District Court for North Dakota decided a suit similar to this brought by the Fair Housing Council. *North Dakota Fair Housing Council v. Woeste*, No. A1–99–116 (D.N.D.2000). The federal court concluded the Fair Housing Council lacked standing to sue under the North Dakota Human Rights Act.

with respect to the Defendants alleged violations of the Fair Housing Act. For example, she contends that the Defendants violated 42 U.S.C. §§ 3604(b) and (f)(3)(B).

### 1) *42 U.S.C. § 3604(f)(3)(B)*

42 U.S.C. § 3604(f)(3)(B) provides that it shall be unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. The Eighth Circuit has yet to explicitly identify the elements of a prima facie case under Section 3604(f)(3)(B). However, the Ninth Circuit has said that to establish a claim under Section 3604(f)(3), a plaintiff must show: (1) she suffers from a handicap as defined by statute; (2) the defendants either knew or should reasonably be expected to know of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendants refused to make such accommodations. *See United States v. California Mobile Home Park Management Co.,* 107 F.3d 1374, 1380 (9th Cir.1997).

Conley has presented evidence to support her claim that she suffers from a mental disability that substantially impacts upon one or more of her major life activities; namely, she has provided letters from her physicians that she suffers from panic disorder, major depressive disorder, and attention deficit hyperactivity disorder. As such, Conley has established a triable issue as to whether she suffers from a handicap.

In addition, there exists a question of fact as to whether the Defendants knew of her alleged disability. The record reveals that Conley wrote to Allen to inform him of her alleged disability along with her desire to keep a therapeutic dog on the premises. Conley also provided Allen with a letter from a treating physician who expressed an opinion on the benefit of such a therapeutic dog.

Third, there exists a question of fact as to whether Conley's requested accommodation was reasonable or necessary to afford her an opportunity use and enjoy the dwelling. The record contains conflicting statements as to whether Conley's dog had an ameliorative effect on her alleged disability. Citing her own experiences along with the letter written by her treating psychiatrist, Conley contends the dog's presence soothed her nerves and generally helped her mental well being. In addition, Conley contends her dog was well cared for and constituted neither a nuisance nor a burden on the Defendants. In contrast, the Defendants cite to the finding of the North Dakota Department of Labor that there was no evidence Conley's dog had an ameliorative effect on her alleged disability. There is clearly a factual dispute and the Court finds there is a triable issue as to whether the accommodation sought by Conley was reasonable or necessary.

As to the issue of whether the Defendants refused to make such accommodations, there appears to be little dispute between the parties. The record establishes that Allen served a notice on Conley to get rid of her dog. The record also establishes that Conley did in fact get rid of her dog. Viewing the facts in a light favorable to Conley, the Court concludes there exists genuine issues of material fact which preclude the entry of summary judgment.

### 2) *42 U.S.C. § 3604(b)*

42 U.S.C. § 3604(b) provides that it shall be unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of race, color, religion, sex, familial status, or national origin." The Court has carefully reviewed the record and finds that there are clearly genuine issues of material fact in dispute which preclude summary judgment on this claim. There are factual disputes which require submission to a jury to resolve.

## IV. CONCLUSION

The Defendants' Motion for Summary Judgment (Docket No. 21) is **GRANTED IN PART** only as to the claims asserted by the North Dakota Fair Housing Council. The North Dakota Fair Housing Council's claims under the Fair Housing Act are **DISMISSED.** However, there are genuine issues of material fact as to defendant Josephine Conley's claims arising under the Fair Housing Act which preclude the granting of summary judgment.

**IT IS SO ORDERED.**