**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| Henlopen Landing Homeowners Association, Inc., | ) ) | |
| Petitioner | ) | C.A. No. 7229-MA |
| | ) | |
| v. | ) | |
| | ) | |
| Russell H. Vester and Jakara Vester, | ) | |
| Respondents | ) | |

**MASTER'S REPORT**

Date Submitted: October 30, 2014
Draft Report: August 29, 2014
Final Report: February 25, 2015

Pending before me are two motions filed by Respondents Russell H. Vester and JaKara Vester to amend their answer, defenses and counterclaims to a petition that was filed by Petitioner Henlopen Landing Homeowners Association, Inc. (the "HLHA"), and to join the president of the HLHA's Board of Directors and the property management company as additional parties to their counterclaims. In this litigation, an action to enforce certain recorded deed restrictions applicable to all homeowners in the residential subdivision known as Henlopen Landing near Lewes, Delaware, Respondents have counterclaimed, challenging Petitioner's actions as violations of the Federal and State Fair Housing Acts.[1] Respondents

---

[1] 42 *U.S.C.* ch. 36 and 6 *Del. C*. ch. 46.

now seek to hold Preston Dyer, the President of HLHA's Board of Directors, and Premier Property and Pool Management, LLC ("PPPM") individually liable for the alleged violations. For the reasons that follow, I recommend in this draft report that the Court permit Respondents to join Dyer as an additional party defendant to Counts II, III, V and VI of Respondents' counterclaims, and to join PPPM as an additional party defendant to Counts I and IV of Respondents' counterclaims. I also recommend that the Court permit Respondents to amend their answer, defenses and counterclaims as will be explained more fully below.

Factual Background[2]

Respondents own a residence in Henlopen Landing, a community that is subject to a Declaration of Covenants, Conditions and Restrictions recorded in the Office of the Recorder of Deeds in and for Sussex County.[3] The Declaration provides, *inter alia*, that:

> No building, outside attached shower, fence, wall, deck, patio, bulkhead, retaining wall, swimming pool, tennis court, septic system, parking area, garage, and/or paving for driveways or garages, or any other structure of any kind shall be erected, placed or altered nor shall a building permit from Sussex County for such improvement or construction for such improvement be applied for on any improved or unimproved property in the Development until all fees to the Association have been paid and complete sets of building plans and elevations, specifications, and site plan (showing the proposed location of such building, drives and parking areas, etc.) shall have been

---

[2] This section is based on the uncontested facts in the pleadings, except as otherwise indicated.
[3] Ex. A of the Complaint.

reviewed and approved in writing by the Henlopen Landing Architectural Board.[4]

In addition, the deed restrictions limit the height of fences to four feet, and prohibit fences from being erected in the front yard or closer to the front of the lot than one-half of the length of the side of the dwelling unit.[5]

On or about June 24, 2011, Mrs. Vester submitted an application for modifications to Respondents' dwelling to HLHA's Architectural Review Board (the "ARB").[6] Specifically, Respondents sought approval for the installation of an irrigation well, a gazebo, a six-foot high fence, and to widen the existing driveway. In the application, Mrs. Vester cited the disability of one of their children as the basis for the request to exceed the permitted fence height. Respondents also wanted to extend the location of their fence closer to the front of their lot than was permitted so their dog could enter and exit their side yard through the door in the garage and not track mud and snow throughout the house in inclement weather.[7] On July 7, 2011, Respondents received approval for all of their requests except the extension of the fence and the expansion of the driveway, which were denied. After further communications between the parties, Respondents began work on

---

[4] *Id.* at 24, ¶ 7.6.1.
[5] *Id.* at 27, ¶ 8.2.1
[6] Ex. B of the Complaint.
[7] The parties dispute whether Respondents based their request for an extension of the location of the fence on their son's disabilities.

their driveway expansion.[8]  On August 6, 2011, Respondents discovered that their privileges to use the community's amenities, i.e., the swimming pool, had been suspended because of alleged ongoing violations of the recorded restrictions.

Procedural History

On November 23, 2011, Mrs. Vester, acting *pro se*, filed an official housing discrimination complaint with the Delaware Division of Human Relations (the "Division"), naming the "Henlopen Landing HOA," the "BOD," and "Premier Property Management" as respondents.  After notice of the complaint was given to HLHA, an initial fact-finding conference was scheduled for January 11, 2012.[9]  The conference was postponed, and on January 13, 2012, HLHA filed a motion to dismiss the complaint in the Division.  On February 29, 2012, Mrs. Vester filed an amended housing discrimination complaint in the Division, adding the three individual members of the ARB as respondents.

Meanwhile, in this Court on February 7, 2012, Petitioner filed its verified petition against Respondents to enforce the deed restrictions under 10 *Del. C.* § 348.[10]  As alleged in this petition, Respondents had violated the restrictions by:  (1) intentionally altering their driveway without written approval of the ARB; (2)

---

[8] The parties dispute whether written approval of the driveway expansion was given.

[9] As will be discussed below, the parties dispute whether notice of the administrative complaint was given to the other named respondents.

[10] Docket Item 1 ("DI")

installing plantings in the area between the roadway and sidewalk without submitting an application or receiving approval from the ARB; and (3) placing garbage receptacles outside of their garage and outside of an approved enclosure. Respondents were served with a summons and copy of the complaint on February 27, 2012.[11] On March 15, 2012, Respondents filed a notice of removal of this action to the United States District Court for the District of Delaware.[12] A United States Magistrate Judge subsequently issued a report and recommendation that the case be remanded to this Court for lack of subject matter jurisdiction.[13] The District Court adopted the report and recommendation, granted HLHA's motion to remand, and closed the case on May 14, 2013.[14]

After Petitioner reopened its case in this Court, Respondents filed their answer, defenses and counterclaims on June 7, 2013,[15] and on June 28, 2013, Petitioner filed its answer to Respondents' counterclaims.[16] The parties stipulated to a scheduling order that was approved on December 3, 2013, in which the parties had until February 28, 2014, to join other parties or seek amendments to the

---

[11] DI 4-5.

[12] DI 6-7.

[13] *Henlopen Landing Homeowners Assoc., Inc., v. Vester*, C.A. No. 12-308-RGA-CJB (D.Del. Apr. 19, 2013) (Magistrate's Report). DI 11.

[14] *Henlopen Landing Homeowners Assoc., Inc., v. Vester*, C.A. No. 12-308-RGA (D.Del. May 14, 2013) (ORDER). DI 10.

[15] DI 14.

[16] DI 18.

pleadings.[17]   On February 27, 2014, Respondents filed their pending motions to amend and for joinder.[18]   Following the submission of the parties' briefs, oral argument on the two motions took place on May 19, 2014, at which time I reserved decision.

Issues

Respondents are seeking to join Dyer and PPPM as additional parties to their counterclaims under Rules 13(h) and 20(a).[19]   According to their motion, Dyer is president of the Board of Directors of HLHA, and one of the original developers of Henlopen Landing.  As president of the Board of Directors, Dyer allegedly was involved in decisions affecting Respondents' use and enjoyment of their residence, which decisions Respondents now claim violated the fair housing laws. Furthermore, as president of the Board of Directors, Dyer signed the verification to the enforcement petition, an action that was initiated after Mrs. Vester filed her housing discrimination complaint in the Division.  Respondents now claim that the filing of this petition was in retaliation for their filing the housing discrimination complaint, and thus also violates the fair housing laws because it was intended to coerce, intimidate, threaten or otherwise interfere with the Vesters' rights under

---

[17] DI 26.

[18] DI 29-30.

[19] It appears from the caption of the proposed amended answer, defenses and counterclaims attached to their motion that Respondents are seeking to substitute

those laws. PPPM, whom Respondents also seek to join, allegedly was involved in the carrying out the instructions of HLHA and Dyer, and was a named respondent in Mrs. Vester's housing discrimination complaint filed on November 23, 2011.

Respondents propose generally amending the factual allegations in support of their counterclaims to include allegations about Dyer's individual role in this dispute and the actions and statements allegedly undertaken or made by agents of PPPM. Respondents seek to impute the actions of its agents to PPPM and to hold Dyer, in his individual capacity as well as his capacity as president of the Board of Directors, liable for allegedly unlawful conduct under the Federal and State Fair Housing Acts.[20]

Petitioner opposes the motions, arguing that Respondents' request to add Dyer and PPPM as parties is futile because the claims against them are time-barred. According to Petitioner, the Federal and State Fair Housing Acts similarly impose a two-year statute of limitations on discrimination claims, and the limitations period began to run on February 7, 2012, when the last alleged

Dyer and PPPM for HLHA as counterclaim defendants. In the text of the proposed amended counterclaims, however, HLHA is included as a counterclaim defendant.

[20] Respondents have counterclaimed for intentional discrimination (Counts I and IV), failure to make reasonable accommodation (Counts II and IV), and retaliation (Counts III and VI), under both the Federal and State Fair Housing Acts. *See* 42 *U.S.C.* §§3604(b) & (f)(2), 3604(f)(3)(B), 3617; 6 *Del. C.* §§ 4603(b)(2), 4603A(a)(2), 4618. Respondents seek to add Dyer to their reasonable accommodation and retaliation claims (Counts II, III, V and VI) and to add PPPM to the intentional discrimination claims only (Counts I and IV).

discriminatory occurrence took place, i.e., when HLHA filed its restriction enforcement petition. Thus, when the Vesters filed their motions to amend and for joinder on February 27, 2014, the two-year limitations period had expired 20 days earlier. Petitioner also argues that Respondents' housing discrimination complaint filed in the Division did not toll the limitations period because neither Dyer nor PPPM were properly named as parties to the administrative proceeding or were given notice. Petitioner contends that without a tolling of the statute of limitations, Respondents' proposed amendments – including changing the party or the name of the party against whom a claim is asserted – are only permitted to relate back to the date of filing if:

> within 120 days of the filing of the complaint, or such additional time the Court allows for good cause shown, the party to be brought in by amendment: (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; and (B) knew or should have known that, but for a mistake concerning the identity of the property party, the action would have been brought against the party.[21]

Petitioner argues that more than 120 days have elapsed and that there was no mistake made in this case. According to Petitioner, Respondents' failure to previously add Dyer and PPPM was intentional, and for this reason their motions should be denied. Finally, Petitioner argues that Respondents' efforts to pierce the

---

[21] Court of Chancery Rule 15(c)(3).

corporate veil of the HLHA to attack Dyer directly must fail due to Respondents' failure to plead with specificity any acts of fraud.

Respondents argue that the statute of limitations on the July 7, 2011 denial of their request for a reasonable accommodation was tolled because of the pendency of the administrative proceedings before the Division. Even without the tolling provision, Respondents argue that under the continuing violation doctrine, they can still pursue their reasonable accommodation claims because an action is timely as long as the last act evidencing the continuing practice falls within the limitations period. According to Respondents, the two-year limitations period on their reasonable accommodations claims has not yet run because on July 7, 2011, the same day that Mrs. Vester learned her request for an exception to the location of her fence had been denied by the ARB, she notified PPPM that she wanted to appeal the decision and requested information about the appeal process.[22] Respondents also allege that on February 17, 2012, through counsel by e-mail to Petitioner's attorney, they renewed their request to install a six foot fence closer to the front yard than is allowed as a reasonable accommodation to their son's disability. The request stated that failure to approve the requested accommodation by the end of February 2012 would be considered a denial. On or about May 24, 2012, Respondent's attorney again requested that Petitioner approve the location of

---

[22] Verified Petition, Ex. C. DI 1.

the fence as a reasonable accommodation for the disability of Respondents' child, and provided verification of the child's disability and need for accommodation. Since neither of these subsequent requests was approved, Respondents argue that they must be considered constructively denied, and that these denials fell within the limitations period.

Respondents further argue that because Dyer was personally involved in the decisions to deny Respondents' repeated requests for a reasonable accommodation, he can be joined as a party to Counts II and V of the counterclaims, and because Dyer authorized the filing and maintaining of Petitioner's enforcement petition, he can be joined as a party to Counts III and VI of the counterclaims (retaliation claims). In a similar vein, Respondents argue that PPPM can be joined as a party to Counts I and IV of the counterclaims (intentional discrimination) because of its conduct toward or actions taken against Respondents that occurred both within and outside of the limitations period under the continuing violation doctrine.

Analysis

As indicated below, federal law provides for the private enforcement of the federal fair housing laws:

(1)(A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory practice or breach.

(B) The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice. This subparagraph does not apply to actions arising from a breach of a conciliation agreement. [23]

Similarly, Delaware law provides for the private enforcement of the State's fair housing laws as follows:

(1)a. An aggrieved person may commence a civil action in the county in which the discriminating housing practice is alleged to have occurred not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, not later than 2 years after such practice has been discovered or reasonably should have been discovered by the aggrieved person, or not later than 2 years after the breach of a conciliation agreement entered into under this chapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

b. The computation of such 2-year period shall not include any time during which an administrative proceeding under this chapter was pending with respect to a complaint or charge under this chapter based upon such discriminatory housing practice. This subparagraph does not apply to actions arising from a breach of a conciliation agreement.[24]

The parties do not dispute that on November 23, 2011, Mrs. Vester filed a *pro se* housing discrimination complaint against "Henlopen Landing HOA, BOD and Premier Property Management" with the Division, and that HLHA received notice of the complaint.[25] The fact that an administrative proceeding was initiated

---

[23] 42 *U.S.C.* § 3613(a)

[24] 6 *Del. C.* § 4613(a).

[25] Petitioner provided copies of Mrs. Vester's official administrative complaint, her amended administrative complaint dated February 29, 2012, and Petitioner's own motion to dismiss in the Division that was dated January 13, 2012. Compendium to Petitioner's Response to Respondents' Motions to Amend their Answer,

with the Division and is still pending serves to toll the two-year statute of limitations as to HLHA.[26]

Although Petitioner admits that it received notice of the administrative proceeding, it argues that PPPM did not. However, the parties do not dispute that the only address listed on the complaint for "Henlopen Landing HOA, BOD and Premier Property Management" is, in fact, the actual address of PPPM.[27] In paragraph six of each printed complaint form,[28] it states that the agency "will furnish a copy of the complaint to the person or organization against whom the complaint is made." Since HLHA received notice of the complaint, it seems improbable that PPPM did not also receive notice. The name "Premier Property Management" closely approximates PPPM's correct name and if there was any doubt, Mrs. Vester's identification of PPPM's address should have eliminated it.[29]

---

Defenses and Counterclaims and to Join Additional Parties, Exs. A-C. ("Petitioner's Compendium").

[26] *North Dakota Fair Housing Council, Inc. v. Allen*, 319 F.Supp.2d 972, 979 (D. ND 2004).

[27] Petitioner's Compendium, Ex. A at 1-2

[28] There are two complaint forms in the record that were executed by Mrs. Vester on November 23, 2011. One is the form used by the U.S. Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity ("HUD") and the other is used by the Delaware Human Relations Commission. They are nearly identical in format and content. *Id.*

[29] In her original housing discrimination complaint, Mrs. Vester identified Jami Ferro as a property manager whom Mrs. Vester believed had violated the law. Petitioner's Compendium, Ex. A at 1-2. *See also* Verified Petition, Ex. C-1 (JaKara Vester's July 7, 2011 email seeking appeal process information and

This notice should have been sufficient to apprise PPPM of the pendency of the administrative proceeding against it, whether or not PPPM chose to respond to it. This notice has the effect of tolling the two-year statute of limitations as to PPPM and, therefore, it would not be futile to add PPPM as a party to Respondents' counterclaims (Counts I and IV).

In contrast, it is clear that the administrative complaint was not filed against Dyer in either his individual capacity or as president of HLHA's Board of Directors. Instead, Mrs. Vester named Paul Brager, the "acting President of HL HOA BOD," as the person she believed had violated the housing discrimination laws.[30] Respondents argue that they only learned of Dyer's involvement through the discovery process that was part of the administrative proceeding,[31] but that does not excuse their delay in seeking to add Dyer as a party. Respondents could have amended the administrative complaint to include allegations against Dyer, just as they did in February 29, 2012, when Mrs. Vester added the three individual members of the ARB as respondents.[32] Having failed to do so, however, Respondents cannot avail themselves of the tolling provisions of the Federal and State Fair Housing Acts since Dyer was not given notice of any administrative

reconsideration of her denied requests forwarded on August 5, 2011, to Jami Ferro by Kate Bond (KRoach@prempropmgmt.com)) .
[30] Petitioner's Compendium, Ex. A.
[31] Transcript of Oral Argument on May 19, 2014, at pp. 6, 13-14.
[32] Petitioner's Compendium, Ex. C.

proceeding pending against him in his individual capacity or in his capacity as President of HLHA's Board of Directors.[33]

Respondents also argue that the repeated denials of their requests for a reasonable accommodation regarding the location of their fence were part of a continuing practice actionable against HLHA and Dyer in his individual capacity under the continuing violation doctrine. Respondents bear the burden of proof under a continuing violations doctrine.[34] In order to avail themselves of this doctrine, Respondents must demonstrate "'an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'"[35]

The limited record in this case indicates that Respondents were denied their initial request for the extension of their fence on July 7, 2011.[36] A renewed request was made after the initiation of this litigation. i.e., after February 7, 2012.[37] As alleged in Respondents' counterclaim, this request was made to HLHA's attorney on February 17, 2012, and it made clear that the failure to approve the requested

---

[33] *Sentell v. RPM Management Co., Inc.*, 653 F.Supp.2d 917, 922 (E.D.Ark. 2009).
[34] *Ortega v. Housing Authority of the City of Brownsville*, 572 F.Supp.2d 829, 835 (S.D.Tex. 2008). *See also Petty v. Portofino Council of Coowners, Inc.,* 702 F.Supp.2d 721, 737 (S.D.Tex. 2010).
[35] *Ortega,* 572 F.Supp.2d at 835 (quoting *Huckabay v. Moore*, 142 F.2d 233, 239 (5th Cir. 1998)).
[36] Petitioner's Answer to Respondents' Counterclaims, at ¶16. DI 18.

accommodation by the end of February would be considered a denial.[38]   No response allegedly was made to this request or to another request for a fence extension that was made on May 24, 2012.[39]

Respondents have failed to demonstrate an organized scheme.  Instead, they have alleged three separate requests for an extension of the fence, each request allegedly for an exception to the community's fence restrictions as a reasonable accommodation for a disabled child.  The first denial occurred on July 7, 2011, the second denial constructively occurred on February 29, 2012, and it is unclear when the third denial constructively occurred since there was no specific deadline given.  However, more than eight months had passed between the first denial and Respondents' second request.  The first denial was sufficiently permanent to trigger a reasonable person to protect his rights.[40]  The first denial was a discrete event, actionable on its own.  Therefore, Respondents cannot avail themselves of the continuing violation doctrine here.

The proposed reasonable accommodation counterclaim against Dyer arising from the July 7, 2011 denial would not be time-barred if the amendments relate back to the original pleading, which in this case occurred on February 7, 2012.

---

[37] *Id.* at ¶ 29.
[38] Respondents' Answer, Defenses and Counterclaims, at ¶ 29.  DI 14.
[39] *Id.* at ¶ 30 & n.2.

Petitioner argues that the requirements of Rule 15(c)(3) have not been met because real and material prejudice would result from the joinder of additional parties at this time and because there was no mistake in Respondents' omission of Dyer as a potential party.

Rule 15(c) provides for the relation back of an amended party to the time of the original complaint when:

> (3) The amendment changes the party of the naming of the party against whom a claim is asserted if … the party to be brought in by amendment
> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
> (B) knew or should have know that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

According to Petitioner, the only prejudice in permitting an amendment adding Dyer as a party is the lengthy delay and the fact that mandatory mediation has already taken place. I do not find these reasons sufficient to deny the amendment. Dyer has been involved in this case at least since December 31, 2011, when he signed the verification to this petition, and there has been no contention that he would be prejudiced in maintaining a defense on the merits due to absent witnesses, failing memories, or the like.

On the other hand, it is also apparent from their housing discrimination complaint that Respondents have known since at least the summer of 2011 that Dyer was the developer of the community, and also believed that Dyer had veto

---

[40] *Ortega*, 572 F.Supp.2d at 836 (citing *Berry v. Bd. of Supervisors of L.S.U.*, 715

power over the homeowners association's board of directors.[41] Although Respondents claim that they did not discover Dyer's alleged personal involvement in the decisions to deny their repeated requests for a reasonable accommodation until shortly after the initiation of the administrative proceedings, that is not the type of mistake contemplated by Rule 15(c).[42] Given Dyer's involvement in the HLHA, it would have been reasonable for him to expect to be named as a party to the administrative proceedings and to this petition, and that the omission of his name was a voluntary decision by Respondents. Therefore, Respondents have not shown the type of mistake that would allow for the relation back of an amended party to the time of the original complaint for their reasonable accommodation counterclaim arising out of the July 7, 2011 occurrence.

Respondents also seek to add Dyer as an amended party to their retaliation claims. The proposed retaliation claims relate to: (1) Dyer's alleged action in "raising unfounded concerns about the driveway alteration" in response to the

---

F.2d 971, 981 (5th Cir. 1983)).

[41] Petitioner's Compendium, Ex. A at 4 ("8/3/11: Spoke to Gail at Pret Dyers office about my pass/privileges being suspended (community is still controlled by developer and can veto HOABOD). She told me to email her the details and she would make Mr. Dyers aware and '… it will be taken care of…' (several emails/calls have been made to date 11/3/11 with no response).")

[42] *Johnson v. Paul's Plastering, Inc*., 1999 WL 744427, at *3 (Del. Super. July 30, 1999) ("The Rule does not protect a Plaintiff who is fully aware of a potential Defendant's identity even if the Plaintiff is not fully aware of such Defendant's responsibility for the harm alleged.") (citing *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C.Cir. 1966)).

Vesters' initial request for a reasonable accommodation during the July 1, 2011 ARB meeting when she allegedly invoked her rights under the fair housing laws; and (2) Dyer's commencement of this litigation after the Vesters filed their housing discrimination complaint with the Division. Petitioner again argues that these claims are time-barred because the last event, the filing of the instant case, occurred on February 7, 2012, more than two years before Respondents' motions were filed.

Respondents contend that the mere filing of this petition itself was a retaliatory act and, since this litigation is still pending, the discriminatory housing practice or breach is still occurring and has not yet terminated so the federal statute of limitations has not yet begun to run.[43] Further, they point out that, unlike federal law, under the State's Fair Housing Act,[44] the limitations period ends no later than

---

[43] Under 42 *U.S.C.* § 3613(a)(1)(A):

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

[44] 6 *Del. C.* § 4613(a)(1)a provides:

> An aggrieved person may commence a civil action in the county in which the discriminating housing practice is alleged to have occurred not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, not later than 2 years after such practice has been discovered or reasonably should have been discovered by the aggrieved person, or not later than 2 years after the breach of a conciliation agreement

2 years after the discriminatory housing practice is discovered or reasonably should have been discovered. Since Respondents were not served with a copy of the verified petition until February 27, 2012, they could not have discovered this alleged discriminatory practice until February 27th.

I find Respondents' arguments – both their primary argument that limitations period has not begun because the termination of the alleged discriminatory housing practice has not yet occurred and their secondary argument regarding the date of discovery of the alleged housing discriminatory practice -- to be persuasive.

In its verified petition, HLHA seeks to enforce three recorded restrictions regarding the altered driveway, plantings, and garbage receptacles on the Respondents' property. As part of the relief requested, HLHA wants an order compelling Respondents to restore their property to the *status quo ante*. As shown in the photographs attached to the petition, the plantings are small evergreen shrubs or trees that can easily be removed,[45] and the garbage receptacles can be moved into the garage without difficulty because the two large ones appear to be wheeled receptacles and the other two receptacles are relatively small.[46] The driveway

---

entered into under this chapter, which occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

[45] In paragraph 23 of Respondents' Answer, Defenses and Counterclaims, Respondents allege that the trees have been removed. DI 14.

[46] Verified Petition, Exs. D & E. DI 1.

apparently was altered by cutting out 300 square feet of grass in order to widen it, crushed stone was added and leveled, and then the entire driveway repaved with hot mix and asphalt for a cost of $2500.00.[47]  Clearly, the cost of restoring the driveway to the *status quo ante* would be much greater than the cost of digging up the plantings and removing the garbage receptacles from view, so the driveway alteration appears to be the most significant violation alleged in the petition.

In their original pleadings, Respondents allege a series of communications and events involving the ARB, PPPM, and HLHA regarding the driveway alteration that began on July 1, 2011, at the conclusion of the ARB meeting where Mrs. Vester allegedly invoked the Federal Fair Housing Act in support of her request for an extension of the location of the fence:  (a) on July 1, 2011 – Mrs. Vester received a request for additional information about the requested driveway alteration;[48]  (b) on July 7, 2011, Mrs. Vester learned that the decision on the driveway alteration was postponed until ARB received plans from a contractor regarding the slope of the driveway;[49] (c) on July 14, 2011, Mrs. Vester received an email from PPPM indicating approval of all work;[50] (d) on August 3, 2011, work on Respondents' driveway was interrupted by PPPM, and after Mrs. Vester provided copies of the contractor's proposal and PPPM's email, PPPM authorized

---

[47] Verified Petition, Ex. B at 7.  DI 1.
[48] Respondents' Answer, Defenses and Counterclaims at ¶ 15.  DI 14.
[49] *Id*. at ¶ 16.

work to be completed;[51] (e) on August 6, 2011, Mrs. Vester discovered her pool keycard had been deactivated and later learned this was because she allegedly had not had approval for the driveway alteration;[52] and (f) on September 21, 2011, Respondents received a letter from HLHA's attorney informing them that there had been no approval for the driveway alteration and instructing them to commission a professional engineer licensed in Delaware to provide an opinion regarding the stormwater drainage from the altered driveway within 10 days.[53]   These original allegations, with the additional proposed amendments concerning the alleged involvement of Dyer and PPPM in this matter, conceivably show a continuum of events leading up to the filing of HLHA's enforcement petition on February 7, 2012. [54]   Therefore, I do not find these proposed retaliation claims to be time-barred.

Finally, Petitioner argues that it would be futile to join the additional parties because the proposed amended pleadings make only conclusory allegations that fail to indicate why the actions of Dyer or PPPM would create any direct liability

---

[50] *Id.* at ¶ 19.
[51] *Id.* at ¶ 20.
[52] *Id.* at ¶ 21.
[53] *Id.* at ¶ 25.
[54] On August 28, 2012, a copy of a Drainage Impact Study on the stormwater runoff pattern of Respondents' driveway authored by a professional engineer licensed in Delaware was provided to HLHA, showing no adverse impact on adjacent properties or Henlopen Landing's stormwater management facilities. *Id.* at ¶ 25 n.1.

for those parties in their individual capacities. Petitioner also raises a veil-piercing defense, arguing that the proposed amended pleadings fail to allege fraud with any specificity in order to attack Dyer directly.

Under the Federal Fair Housing Act, claims may be brought against individual board members of non-profit corporations who are allegedly involved in unlawful housing discrimination, and also against property managers, regardless of whether the alleged unlawful actions were committed within the course and scope of employment.[55] Reviewing the proposed amended pleadings, I find it reasonably conceivable from the allegations in Respondents' counterclaims that Dyer and PPPM may have been or currently are involved in discriminatory housing practices or breaches of the Federal and State Fair Housing Laws.

Conclusion

For the reasons stated above, I recommend that the Court grant Respondents' Motion to Amend Their Answer, Defenses and Counterclaims in order to join Dyer and PPPM as additional parties except to the extent that Respondents seek to hold Dyer directly liable for the July 7, 2011 denial of their alleged request for an extension of the location of a fence as a reasonable accommodation for their disabled child, which is time-barred.

---

[55] *See, e.g., Fielder v. Sterling Park Homeowners Assoc.*, 914 F.Supp.2d 1222, 1227-1230 (W.D.Wash. 2012); *Housing Opportunities Project for Excellence, Inc.*

HLHA has taken several exception to my draft report recommending that the Court allow Respondents to amend their answer, defenses, and counterclaims and to join the president of HLHA's Board of directors and the property management company as additional parties to their counterclaims, except to the extent Respondents seek to hold the president directly liable for the July 7, 2011 denial of Respondents' request to extend the location for their fence allegedly as a reasonable accommodation for their son's disabilities. I have reviewed the parties' briefs in support of and in opposition to the HLHA's exceptions, and see no reason to modify my draft report. Therefore, I am adopting my draft report as my final report. The parties are referred to Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz
cc:    Michael R. Smith, Esquire
       Neilson C. Himelein, Esquire
       Michael Ryan Smith, Esquire

---

*v. Key Colony No. 4 Condominium Assoc., Inc.,* 510 F.Supp.2d 1003, 1013-1014 (S.D.Fla. 2007).